# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

JOHN TEDESCHI and
GERALDINE TEDESCHI,

    Plaintiffs,

    v.

D.N. DESIMONE CONSTRUCTION,
INC., DENNIS DESIMONE, ALBERT
DESIMONE, and ANTHONY
DESIMONE,

    Defendants.

CIVIL NO. 15-8484 (NLH/JS)

**OPINION**

---

**APPEARANCES:**

DAVID T. SHULICK
1500 JFK BLVD.
SUITE 1030
PHILADELPHIA, PA 19102
    On behalf of plaintiffs

MARK BONGIOVANNI
LEARY BRIDE TINKER & MORAN
7 RIDGEDALE AVENUE
CEDAR KNOLLS, NJ 07927
    On behalf of defendants as to Count II of Amended Complaint

THOMAS H. WARD
JOHN H. SHINDLE
WARD LAW FIRM
196 GROVE AVENUE
SUITE A
WEST DEPTFORD, NJ 08086
    On behalf of defendants on all other counts

**HILLMAN, District Judge**

    Plaintiffs, John and Geraldine Tedeschi, filed a complaint

against defendants, D.N. DeSimone Construction, Inc., Dennis DeSimone, Albert DeSimone, and Anthony DeSimone, relating to the reconstruction of their home in Longport, New Jersey damaged during Superstorm Sandy in October 2012. Plaintiffs' complaint alleges that they withheld payment to defendants because of, *inter alia*, poor craftsmanship and false representations, and as a result, defendants (1) filed a lien against plaintiffs in the amount of $144,733.36, and (2) instituted an arbitration proceeding against plaintiffs. The arbitration was resolved in defendants' favor, and required that the plaintiffs pay defendants for the work defendants had completed.

One of plaintiffs' claims in their complaint requests that the Court vacate the arbitration proceeding because the parties' contract did not contain a valid arbitration provision. Plaintiffs also claim that defendants' prior counsel falsely commenced a New Jersey Construction Statutory Lien Arbitration proceeding despite the existence of an executed lien waiver.

In the Court's previous Opinion denying defendants' motion to dismiss plaintiffs' complaint in favor of arbitration, the Court found (1) it was unclear from the face of plaintiffs' complaint that they contractually agreed to have their claims against defendants resolved through arbitration, and (2) in response to defendants' motion, plaintiffs provided additional facts

sufficient to demonstrate that the agreement to arbitrate is in dispute.  The Court directed the parties to undertake expedited discovery limited to the issue of the arbitrability of plaintiffs' claims against defendants.  (Docket No. 53.)

In accordance with the Court's order, the parties deposed both plaintiffs and defendant Dennis DeSimone.  Defendants have now moved, under the standard for summary judgment, to dismiss plaintiffs' complaint in favor of arbitration.  See Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764, 771, 776 (3d Cir. 2013) ("[I]f the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then 'the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question.'  After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard.").  Plaintiffs have opposed defendants' motion.

## DISCUSSION

### A.   Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship

between the parties and the amount in controversy exceeds
$75,000. The citizenship of the parties is as follows:
Plaintiffs John and Geraldine Tedeschi are citizens of the state
of Florida; Defendant D.N. DeSimone Construction, Inc. is a
corporation of the state of New Jersey with its principal place
of business at 711 A-Mantua Pike, Woodbury, New Jersey;
individual defendants Dennis DeSimone, Albert DeSimone, Anthony
DeSimone are all adult individuals, corporate officers of D.N.
DeSimone Construction, Inc., who are citizens of the state of
New Jersey.

### B.    Summary Judgment Standard

Summary judgment is appropriate where the Court is
satisfied that the materials in the record, including
depositions, documents, electronically stored information,
affidavits or declarations, stipulations, admissions, or
interrogatory answers, demonstrate that there is no genuine
issue as to any material fact and that the moving party is
entitled to a judgment as a matter of law. Celotex Corp. v.
Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a).

An issue is "genuine" if it is supported by evidence such
that a reasonable jury could return a verdict in the nonmoving
party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
248 (1986). A fact is "material" if, under the governing

substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

### C.  Analysis

On July 31, 2013, defendants mailed to plaintiffs two

5

originals of the "Standard Form of Agreement Between Owner and
Contractor" created by the American Institute of Architects
(AIA), AIA Form A101-2007. (Docket No. 57-2 at 2-23.) The
first page of the Standard Form states that the A201-2007
"General Conditions of the Contract for Construction" is adopted
in the Standard Form by reference. (Id. at 2.) The first page
of the Standard Form also provides, "This document has important
legal consequences. Consultation with an attorney is encouraged
with respect to its completion or modification." (Id.)
Defendants asked plaintiffs to review the documents, and if they
met with plaintiffs' approval, sign and return one copy to
defendants. (Id. at 23.) Plaintiffs signed the contract on
August 8, 2013. (Id. at 14.)

Plaintiffs argue that they did not know they waived their
right to a jury trial for disputes arising from their contract
with defendants because they did not discuss alternative dispute
resolution options with defendants prior to signing the
contract. Plaintiffs also argue the arbitration provision was
hidden in the General Conditions Form incorporated by reference
into the Standard Form contract, and the General Conditions Form
was not provided to plaintiffs. Plaintiffs further argue that
the contract itself indicated that no other documents or
provisions were included, which led plaintiffs to believe that

they were in possession of all of the contract documents, which did not include an arbitration provision.[1]

Defendants counter that the arbitration provision is not buried in the General Conditions Form, but is clearly stated in the Standard Form. Defendants further argue that plaintiffs' admission that they did not read the entire contract renders meaningless their argument regarding what they were and were not provided with. Moreover, defendants argue that a party's failure to read or review a contract is not a defense to a contract term's enforcement.

The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–16, and the nearly identical New Jersey Arbitration Act, N.J.S.A. 2A:23B-1 to -32, enunciate federal and state policies favoring arbitration. Atalese v. U.S. Legal Services Group, L.P., 99 A.3d 306, 311–12 (N.J. 2014), cert. denied, 135 S. Ct. 2804 (2015). An arbitration agreement is subject to state-law contract principles.[2] First Options of Chicago, Inc. v. Kaplan,

---

[1] Plaintiffs argue that defendants performed substantial work prior to the parties' signing of the contract. The Court is unclear of the import of defendants performing work prior to the singing of the contract. If plaintiffs are arguing that the pre-contractual work performed by defendants cannot be arbitrated because it was performed prior to the contract, plaintiffs have not provided the Court with any argument or caselaw to support that position.

[2] The parties do not point to a contractual choice-of-law

514 U.S. 938, 944 (1995) (explaining that although the FAA expresses a national policy favoring arbitration, the law presumes that a court, not an arbitrator, decides any issue concerning arbitrability).  An enforceable agreement requires mutual assent - a meeting of the minds based on a common understanding of the contract terms.  Morgan v. Sanford Brown Inst., 137 A.3d 1168, 1180 (N.J. 2016) (citing Atalese, 99 A.3d at 313).  The right to a civil jury trial is guaranteed by the New Jersey Constitution.  Id. (citing N.J. Const. art. I, ¶ 9). "[W]hen a contract contains a waiver of rights - whether in an arbitration or other clause - the waiver must be clearly and unmistakably established." Id. (citing Atalese, 99 A.3d at 314); see also Guidotti, 716 F.3d at 773 (quoting Par-Knit Mills, 636 F.2d at 54) ("Before a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect.").

Plaintiffs do not dispute that they had the opportunity to read and review the 10-page Standard Form contract that they signed, which included the following provisions on pages 8 and 9:

_____

provision, but it appears that the parties agree New Jersey law governs the parties' contract.

**ARTICLE 13 DISPUTE RESOLUTION**

**§ 13.1 INITIAL DECISION MAKER**
The Owner will serve as Initial Decision Maker pursuant to
Section 15.2 of AIA Document A201-2007.
*(If the parties mutually agree, insert the name, address,
and other contact information of the Initial Decision
Maker, if different than the Owner.)*

**§ 13.2 BINDING DISPUTE RESOLUTION**
For any Claim subject to, but not resolved by mediation
pursuant to Section 15.3 of AIA Document A201-2007, the
method of binding dispute resolution shall be as follows:
*(Check the appropriate box. If the Owner and Contractor do
not select a method of binding dispute resolution below, or
do not subsequently agree in writing to a binding dispute
resolution method other than litigation, Claims will be
resolved by litigation in a court of competent
jurisdiction.)*

　　　[X] Arbitration pursuant to Section 15.4 of AIA
Document A201-2007

　　　[ ] Litigation in a court of competent jurisdiction

　　　[ ] Other (Specify)

. . .


**ARTICLE 15 MISCELLANEOUS PROVISIONS**
§ 15.1 Where reference is made in this Agreement to a
provision of AIA Document A201-2007 or another Contract
Document, the reference refers to that provision as amended
or supplemented by other provisions of the Contract
Documents.

. . .

§ 15.6 Other provisions:  None

**ARTICLE 16 ENUMERATION OF CONTRACT DOCUMENTS**
§ 16.1 The Contract Documents are enumerated in the
sections below:

§ 16.1.1 The Agreement is this executed AIA Document A103-

2007 Standard Form of Agreement Between Owner and Contractor

§ 16.1.2 The General Conditions are AIA Document A201-2007, General Conditions of the Contract for Construction.

§ 16.1.3 The Supplementary and other Conditions of the contract: None

. . .

§ 16.1.6 The Addenda, if any:  None

§ 16.1.7 Additional documents, if any, forming part of the Contract Documents: No

(Docket No. 57-2 at 9.)

Plaintiffs argue the substance of the arbitration provision and the arbitration process is contained in the General Conditions, and because they were not provided with a copy of the General Conditions, and the Standard Form indicates that there are no "other provisions," no "supplementary or other conditions," no "addenda," and no "additional documents," they were completely unaware that they agreed to waive their right to a jury trial in favor of arbitrating any dispute that arose in the parties' contractual relationship.

The Court cannot assess plaintiffs' credibility at summary judgment, but the Court has no reason to doubt plaintiffs' surprise that the contract provides for binding arbitration of any dispute because the Court also has no reason to doubt plaintiffs' testimony that they did not read the entire contract

before signing it. If they had, the Standard Form makes it clear in plain and obvious language that the method of binding dispute resolution is arbitration, and not "litigation in a court of competent jurisdiction." "'[S]igning a contract creates a conclusive presumption that the signer read, understood, and assented to its terms.'" Giaccone v. Canopius U.S. Ins. Co., 133 F. Supp. 3d 668, 674 (D.N.J. 2015) (quoting Raiczyk v. Ocean Cnty. Veterinary Hosp., 377 F.3d 266, 270 (3d Cir. 2004)) (other citation omitted). "Failing to read a contract therefore provides no defense to an agreement's binding terms." Id. (citing Modern Security v. Lockett, 143 A. 511 (N.J. 1928); Riverside Chiropractic Grp. v. Mercury Ins. Co., 404 N.J. Super. 228, 961 A.2d 21 (2008)) (other citation omitted).

This situation is not one where an unsophisticated consumer unwittingly agrees to binding arbitration and is uninformed that arbitration waives her right to go to court. For example, in Atalese, the plaintiff entered into a service contract with defendant USLSG, which promised to provide debt-adjustment services. Atalese, 99 A.3d at 309. Plaintiff filed suit against USLSG for fraud, and USLSG moved to compel arbitration. Id. The arbitration provision was on page nine, paragraph sixteen, in a 23-page service contract: "In the event of any

11

claim or dispute between Client and the USLSG related to this

Agreement or related to any performance of any services related

to this Agreement, the claim or dispute shall be submitted to

binding arbitration upon the request of either party upon the

service of that request on the other party. . . . ."  Id. at

310.  The plaintiff argued that the arbitration was

unenforceable, and the New Jersey Supreme Court agreed:

> Nowhere in the arbitration clause is there any explanation
> that plaintiff is waiving her right to seek relief in court
> for a breach of her statutory rights.  The contract states
> that either party may submit any dispute to "binding
> arbitration," that "[t]he parties shall agree on a single
> arbitrator to resolve the dispute," and that the
> arbitrator's decision "shall be final and may be entered
> into judgment in any court of competent jurisdiction."  The
> provision does not explain what arbitration is, nor does it
> indicate how arbitration is different from a proceeding in
> a court of law.  Nor is it written in plain language that
> would be clear and understandable to the average consumer
> that she is waiving statutory rights.  The clause here has
> none of the language our courts have found satisfactory in
> upholding arbitration provisions - clear and unambiguous
> language that the plaintiff is waiving her right to sue or
> go to court to secure relief. . . . [T]he clause, at least
> in some general and sufficiently broad way, must explain
> that the plaintiff is giving up her right to bring her
> claims in court or have a jury resolve the dispute.

Id. at 315.

The N.J. Supreme Court emphasized, however, "that no

prescribed set of words must be included in an arbitration

clause to accomplish a waiver of rights.  Whatever words compose

an arbitration agreement, they must be clear and unambiguous

that a consumer is choosing to arbitrate disputes rather than have them resolved in a court of law. In this way, the agreement will assure reasonable notice to the consumer." _Id._ at 316.

In contrast to _Atalese_ is _Columbus Circle NJ LLC v. Island Construction Co., LLC_, 2017 WL 958489 (N.J. Super. App. Div. March 13, 2017), which distinguishes _Atalese_, and concerns a situation very similar to the one in this case. In _Columbus Circle_, David Kovacs, the LLC plaintiff's sole member, entered into a contract with the defendant construction company to build a $1.96-million-dollar, 10,000-square-foot home in Avalon, New Jersey on bayfront property owned by the LLC. _Id._ at *1. The parties signed the Standard AIA Form A101-2007, which was supplemented with the General Conditions AIA Form A201-2007, and included Section 13.2 binding dispute resolution where the "X" was marked next to "Arbitration pursuant to Section 15.4 of AIA Document A201-2007," rather than the choice "Litigation in a court of competent jurisdiction." _Id._ Disputes over the cost of the project arose, eventually leading to the contract's termination. _Id._ The LLC plaintiff filed suit, and the construction company moved to dismiss based on the arbitration provision. _Id._ The trial court granted the defendant's motion, and the appellate division affirmed on appeal. _Id._ at *2.

The court analyzed the law on the enforceability of
arbitration provisions, and specifically found that the concerns
in Atalese were not present.  The court observed that the
situation was not "a consumer contract of adhesion where one
party possessed superior bargaining power and was the more
sophisticated party," but "[r]ather, it was a negotiated
agreement between sophisticated business entities . . . ."  Id.
at *3 (citing Delta Funding Corp. v. Harris, 189 N.J. 28, 40
(2006)) (quotations and alterations omitted) ("Unlike the
plaintiff in Atalese, neither the LLC nor Kovacs was 'an average
member of the public.'  Kovacs was sophisticated enough to
operate in the form of an LLC, to hire an owners representative,
and to engage in a two-million-dollar transaction.  He
negotiated and changed the terms of the contract with the advice
of counsel, who reviewed and altered the contract before Kovacs
signed it on behalf of the LLC.").  The court specifically found
that the AIA contract form "clearly informed the LLC it was
making the choice to waive litigation in court in favor or
arbitration," and in assessing "whether the LLC and Kovacs
understood their choice, it was obviously relevant that they
were sophisticated and represented by counsel and an owners
representative."  Id. at *6.

Thus, Atalese teaches that a valid arbitration clause must

"explain in some broad or general way that arbitration is a substitute for the right to seek relief in our court system." Morgan, 137 A.3d at 1179 (discussing Atalese).  "No magical language is required to accomplish a waiver of rights in an arbitration agreement.  Our courts have upheld arbitration clauses that have explained in various simple ways 'that arbitration is a waiver of the right to bring suit in a judicial forum.'"  Id. (quoting Atalese, 99 A.2d at 442).

In this case, the binding dispute resolution provision in the Standard Form provided to plaintiffs succinctly offered three choices to resolve disputes: (1) "Arbitration pursuant to Section 15.4 of AIA Document A201-2007," (2) "Litigation in a court of competent jurisdiction," or (3) "Other."  The box next to the first choice – arbitration – was marked with an "X."  The boxes next to choice two – litigation – and choice three – "other" – were left unchecked.  Even under the Atalese standard, the selection of arbitration over litigation clearly explains in a simple way that the parties' disputes must be resolved in arbitration instead of litigation.

Moreover, the binding dispute resolution provision specifically explains, "If the Owner and Contractor do not select a method of binding dispute resolution below, or do not subsequently agree in writing to a binding dispute resolution

method other than litigation, Claims will be resolved by litigation in a court of competent jurisdiction." The contract is therefore clear that the parties' right to bring suit in a judicial forum is the default option, except if arbitration is selected. This easily satisfies the Atalese requirement that a contract must explain in a broad or general way that arbitration is a substitute for the right to seek relief in the court system.

Plaintiffs argue that their status as a medical doctor and successful business owners should not factor in the Court's analysis. Even though New Jersey law would permit the Court to do so in this case as described in Columbus Circle, the language in the Standard Form is clear enough to meet even the Atalese unsophisticated consumer standard.

Plaintiffs also argue that because they were not provided with the General Conditions which set forth the particulars of the arbitration process, that failure invalidates the selection of arbitration over litigation in the Standard Form. This argument is without merit. The General Conditions are referenced numerous times in the Standard Form, and are specifically indicated to be part of the parties' entire contract. If plaintiffs were unsure what the General Conditions provided, they should have contacted defendants for a copy, or

heeded the Standard Form's advice to have an attorney review the

contract.  Nevertheless, the binding dispute resolution in the

Standard Form is sufficient on its own to constitute a valid

waiver of plaintiffs' right to bring suit in court.

Defendants provided plaintiffs with a 10-page contract for

the reconstruction of their multimillion dollar beachfront home.

If plaintiffs had read page 8 of the contract, they would have

clearly seen that binding arbitration, and not litigation in a

judicial forum, was the selected form of dispute resolution.

Putting aside that plaintiffs trusted defendants because they

are family members, if the manner by which potential disputes

was as important to plaintiffs as they testified to, they could

have discussed with defendants changing the dispute resolution

selection in the contract prior to signing it.  Plaintiffs hired

defendants to reconstruct their home, and plaintiffs were under

no obligation to sign a contract with defendants that they did

not wish to.[3]  Plaintiffs' failure to read the contract and see

the explicit selection of arbitration in the dispute resolution

---

[3] Defendants are just as bound to arbitration as plaintiffs, and
if defendants wished to lodge claims against plaintiffs for
disputes arising from the contract, they would be required
toarbitrate their dispute.  Since defendants began
reconstruction of plaintiffs' home prior to the signing of the
contract, defendants appear to have had less bargaining power
than plaintiffs had the contract, which covered payment terms,
not been signed.

section does not invalidate that provision.

## CONCLUSION

The arbitration provision in the parties' contract is valid and enforceable. Accordingly, plaintiffs' action against defendant in this Court must be dismissed in favor of arbitration. An appropriate Order will be entered.


Date: __May 8, 2017__          ___s/ Noel L. Hillman___
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.

18